Filed 4/20/22; Modified and Certified for Publication 5/13/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| ROBERT J. HASSETT, | C092212 |
| Plaintiff and Respondent, | (Super. Ct. No. SC20180100) |
| v. | |
| PATRICIA G. OLSON et al., | |
| Defendants and Appellants; | |
| CODY LEE BASS et al., | |
| Defendants and Respondents. | |

Defendants Patricia G. Olson and Jimmy Dastur (defendants) appeal from an order disqualifying Steven G. Bailey, a former El Dorado County Superior Court judge, from representing them in this lawsuit filed by plaintiff Robert J. Hassett. The trial court relied

on rule 1.12 of the Rules of Professional Conduct,[1] which provides in relevant part that "a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge . . . unless all parties to the proceeding give informed written consent." (Rule 1.12(a).) The court found that Bailey's participation as a judge was personal and substantial in rendering decisions in two other cases involving the validity of options and a purchase agreement for the same real property at issue in the action brought by Hassett.

Defendants contend that the order should be reversed because: (1) Hassett lacks standing; (2) the disqualification motion was a tactic designed to disrupt defense; and (3) Bailey did not personally and substantially participate as a judge in a "matter" within the meaning of rule 1.12.

We will affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2018, Hassett filed a complaint for breach of contract for sale of certain real property, for specific performance of contract, for declaratory relief, and to quiet title. Hassett named as defendants Olson, individually and as trustee of the Patricia G. Olson revocable trust, Dastur as the trustee of the Patricia G. Olson irrevocable living trust, Cody Lee Bass, and Green Bijou Properties, LLC (Green Bijou). Hassett alleged that he is the rightful owner of two real properties in South Lake Tahoe: 949 Bal Bijou Road, a residence adjacent to the other property located at 3443 Lake Tahoe Boulevard, also referred to as the Olson Bijou Shopping Center. In September 2018, Hassett amended the complaint to allege claims for breach of a contract to sell these properties to him, specific performance of the contract, declaratory relief against Bass concerning his purported option agreements to purchase the properties, declaratory relief that transfer of

---

[1] All undesignated rule references are to the Rules of Professional Conduct.

title to the properties to Green Bijou was null and void, and to quiet title to the properties, as well as other claims against Bass and Green Bijou.

In February 2020, Hassett brought a motion to disqualify Bailey from representing Olson and Dastur based on rule 1.12. Hassett contended that Bailey presided over two cases in El Dorado County Superior Court—*Cody Bass and Tahoe Wellness Cooperative, Inc. v. City of South Lake Tahoe*, El Dorado County Superior Court case No. SC20160208 (*Bass v. South Lake Tahoe*), and *Cody Bass v. Olson Bijou Center, L.P., Patricia G. Olson and Patrick Olson*, El Dorado County Superior Court case No. SC20160080 (*Bass v. Olson*)—and issued orders relating to the enforceability of Bass's options to purchase the two South Lake Tahoe properties, matters also in dispute in Hassett's action.

A supporting declaration attached a letter from Bailey to the El Dorado County Superior Court judge assigned to this case. Bailey informed the judge that he had associated into the case as co-counsel for Dastur. Bailey expressed concern regarding a hearing set for the following day, which the judge might not be able to hear based on the judge's status as Bailey's former colleague and their social relationship. Bailey noted that in all previous matters where he appeared in El Dorado County Superior Court the entire bench had recused itself and referred the matter to the Judicial Council for reassignment. Bailey suggested the judge inform counsel for the parties whether the hearing would go forward.[2]

The declaration also attached as exhibits: (1) a temporary restraining order Bailey issued in *Bass v. Olson* enjoining the owners from entering into any new leases or modifying any existing leases for the South Lake Tahoe properties without Bass's

---

[2] The judge disqualified herself that day under Code of Civil Procedure section 170.1. The matter was transferred to a Sacramento County Superior Court judge sitting in El Dorado County Superior Court.

consent; (2) an order Bailey signed in *Bass v. South Lake Tahoe* temporarily staying South Lake Tahoe from denying Bass a marijuana dispensary permit; and (3) the transcript of a hearing Bailey conducted on the request for a temporary stay.[3]

The discussion between counsel for the parties and Bailey at the hearing indicated that Olson as owner had objected to the city issuing a marijuana dispensary permit, a required element for the permit, to Bass and his dispensary leasing space at the shopping center. In the course of the hearing, Bailey commented that the property owner might have "unclean hands," in that the objection was voiced while the landlord (Olson) and lessee (Bass) were in litigation "over who's actually the rightful owner of the property and whether the Court [Bailey] should compel the property owners themselves to comply with the agreement that they allegedly had entered into."[4] Bailey referred to issuing a discovery order to the property owners in this "companion case"—evidently referring to *Bass v. Olson*—which was "intertwined" with the permit process. Bailey commented that it was "unconscionable" for the property owners to enter into a five- to 15-year lease with Bass and then in the middle of the lease term state that the lessee does not have permission to operate a dispensary.

Olson and Dastur opposed the motion. In support of the opposition, Bruce Grego, counsel for Olson and Dastur, declared that he had been working with Bailey to prepare for trial and would not be ready for the scheduled trial setting conference, if the motion were granted and it became necessary to interview and hire new co-counsel, with the attendant burden on Olson's limited resources.

---

[3] These exhibits are preceded by an illegible document described only as a minute order Bailey issued in *Bass v. South Lake Tahoe*.

[4] A brief Bass filed in this case quotes Bailey as stating at the hearing that " 'it's potentially probably likely possible at some point in the future that Mr. Bass ends up as the property owner nunc pro tunc back to the date when the agreement . . . was supposed to have been concluded.' "

Counsel for Bass and Green Bijou declared that these defendants had no objection to Bailey representing Dastur. Counsel further stated that Hassett was not a party to any matter before Bailey, therefore there was no concern that Hassett's confidential information might be disclosed. Counsel suggested that Hassett brought the motion merely to disrupt the defense.

Bailey declared that *Bass v. South Lake Tahoe* was assigned to him for all purposes and that he participated in pretrial motions in *Bass v. Olson*, but was not the trial or settlement judge in the latter case and did not obtain any confidential information. Bailey stated that *Bass v. South Lake Tahoe* involved the plaintiffs' request for court intervention to compel the city to issue a new permit for a marijuana dispensary. In *Bass v. Olson*, Bass sought to enforce an option to purchase the shopping center. Olson settled with Bass and sold the shopping center to him. Bailey echoed co-counsel that disqualification would result in substantial delay in the defense's trial preparation.

The trial court granted the motion to disqualify. The court explained that the authority to disqualify counsel stems from every court's inherent power under Code of Civil Procedure section 128, subdivision (a)(5), to control proceedings in the furtherance of justice.

The court said an appearance of impropriety is sufficient for disqualification. A violation of a disciplinary rule would also justify disqualification. "Thus, if Steven Bailey's representation of Opposing Defendants is connected with a matter in which Steven Bailey personally and substantially participated as a judge, then rule 1.12 has been violated and disqualification to avoid the appearance of impropriety is appropriate."

The trial court rejected defendants' argument that Hassett lacked standing to bring the motion because Bailey did not obtain confidential information. The court determined that the appearance of impropriety required that the parties and the public receive an assurance that a former judge or the former judge's law firm did not receive an unfair

5

advantage. For that reason, the court found that Hassett had standing to challenge Bailey's representation in violation of rule 1.12.

The court also rejected defendants' argument that disqualification would be disruptive to their legal team and delay trial preparation. The court found the argument unpersuasive because defendants continued to be represented by remaining counsel, who could participate in the scheduled trial setting conference.

The court found that Bailey's representation in this case was connected with a "matter" in which Bailey participated personally and substantially as a judge, sufficient to satisfy the application of rule 1.12. *Bass v. South Lake Tahoe*, *Bass v. Olson* and Hassett's case concerned ownership of the same real properties. In *Bass v. Olson*, Bailey rendered decisions related to the validity and enforceability of Bass's option agreements to purchase the properties. As for *Bass v. South Lake Tahoe*, defendants maintained that case involved marijuana dispensary permits not acquisition of the properties. But defendants' only argument that *Bass v. Olson* was different from Hassett's suit was that these were two different cases in two different courts. The court rejected defendants' argument that the term "matter" in rule 1.12 was synonymous with "case." Citing a broad definition of "matter" in rule 1.7(e), which the court determined was applicable to rule 1.12, the court noted that *Bass v. Olson* involved the same specific persons, Olson and Bass, and the same controversies regarding the validity of the same options to buy the same real property as Hassett's suit.

The court further found that Bailey's participation in a matter within the meaning of rule 1.12 was substantial, in that defendants acknowledged that Bailey participated "materially" by issuing a restraining order and ruling on discovery motions in *Bass v. Olson*.

Lastly, the trial court disqualified Bailey's firm, Bailey & Romero, because Bailey was not timely screened from other lawyers in the firm, as required by rule 1.12(a) to avoid vicarious disqualification.[5]

## DISCUSSION

### I

### *Standard of Review*

"An order granting or denying a disqualification motion is an appealable order [citations] and is reviewed for abuse of discretion [citation]. The trial court's ruling is presumed correct [citation] and reversal is permissible 'only when there is no reasonable basis for the trial court's decision' [citation]. We accept as correct all of the court's express or implied findings that are supported by substantial evidence. [Citation.]" (*Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197, 1203 (*Kennedy*).)

### II

### *Standing*

Defendants contend that Hassett lacks standing to challenge Bailey because Hassett was not a party in *Bass v. Olson* or *Bass v. South Lake Tahoe* and Bailey never received any confidential information in presiding over these cases.

Defendants, however, cite no authority that a motion to disqualify a former judge may be brought only by a party to a proceeding over which the judge presided. To the contrary, in *Conservatorship of Lee C.* (2017) 18 Cal.App.5th 1072 (*Lee C.*), on the People's invitation, the trial court disqualified county counsel from a case involving a petition for a Murphy conservatorship for a criminal defendant found incompetent to stand trial. (*Id.* at pp. 1077-1078, 1081-1082.) County counsel represented the public guardian in resisting the court's order to pursue the conservatorship petition. (*Id.* at

---

[5] Defendants do not challenge on appeal the trial court's decision to disqualify Bailey's firm.

7

pp. 1077-1078.) County counsel argued that "the People had no attorney-client relationship with county counsel or the Public Guardian and had no role in the conservatorship proceedings and thus no standing to bring a motion to disqualify." (*Id.* at p. 1083.) The appellate court quoted *Kennedy* that: " '[W]hile federal courts generally limit standing to bring disqualification motions to clients or former clients [citation], in California, "where the ethical breach is ' "manifest and glaring" ' and so 'infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of [his or] her claims' [citation], a nonclient might meet the standing requirements to bring a motion to disqualify based upon a third party conflict of interest or other ethical violation." [Citation].' " (*Id.* at p. 1083; *Kennedy, supra*, 201 Cal.App.4th at p. 1204).) " 'Accordingly, we conclude that where an attorney's continued representation threatens an opposing litigant with cognizable injury or would undermine the integrity of the judicial process, the trial court may grant a motion for disqualification, regardless of whether a motion is brought by a present or former client of recused counsel.' " (*Lee C.*, at p. 1083, quoting *Kennedy*, at p. 1205.)

The trial court correctly determined that Bailey's representation of defendants in violation of rule 1.12 would impact Hassett's interest in a fair adjudication of his claims and " 'undermine the integrity of the judicial process.' " (*Lee C., supra*, 18 Cal.App.5th at p. 1083.) Paraphrasing our decision in *Kennedy*, "[i]t makes no sense for a court to stand idly by and permit conflicted counsel to participate in a case merely because neither a client nor former client [nor party to a former proceeding] has brought a motion." (*Kennedy, supra*, 201 Cal.App.4th at pp. 1204-1205.) " '[T]he court has an *independent interest* in ensuring trials are conducted within ethical standards of the profession and that legal proceedings appear fair to all that observe them.' [Citation.]" (*Id.* at p. 1205; see also *Great Lakes Construction, Inc. v. Burman* (2010) 186 Cal.App.4th 1347, 1355 [" 'The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar' "].)

8

Accordingly, we conclude that Hassett's standing to bring a disqualification motion did not require him to be a party to an action before Bailey.

With respect to defendants' assertion that Hassett lacked standing because Bailey did not receive confidential information, in *Higdon v. Superior Court* (1991) 227 Cal.App.3d 1667 (*Higdon*), there was no contention that the former judicial officer disqualified in that case had obtained confidential information. In *Higdon*, wives in two separate marital dissolution cases moved to recuse the firm representing the husbands' counsel when a court commissioner, who had heard and decided contested matters in each case, resigned and joined the firm. (*Id.* at p. 1670.) Finding that no case or statute at that time "answer[ed] the question of disqualification of a former judicial officer from personal participation as counsel," the court looked to rule 1.12(a) of the American Bar Association Model Rules of Professional Conduct (ABA Model Rules).[6] (*Higdon*, at p. 1673.) The court held that a violation of rule 1.12 of the ABA Model Rules provided a "sound basis" to disqualify the former commissioner "from personal participation as counsel."[7] (*Higdon*, at p. 1673.)

Defendants quote *Cho v. Superior Court* (1995) 39 Cal.App.4th 113, 121, that " '[t]he protection of the confidences of litigants has been the primary focus of rules of professional conduct in California and as drafted by the American Bar Association.' " *Cho* held that a former judge and the law firm that hired him must be disqualified from representing a party in an action in which the judge had received confidences from the

---

[6] On May 10, 2018, the California Supreme Court approved comprehensive amendments to the Rules of Professional Conduct, effective November 1, 2018, including rule 1.12, which takes language from rule 1.12 of the ABA Model Rules. (See *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.* (2018) 6 Cal.5th 59, 85, fn. 7.)

[7] The court did not uphold vicarious disqualification of the firm but remanded the case to the trial court to determine whether the court commissioner had been effectively screened. (*Higdon, supra*, 227 Cal.App.3d at p. 1681.)

litigants during settlement negotiations. (*Id.* at p. 119.) The court in *Cho* acknowledged that in *Higdon* "[t]here was no indication that the commissioner had been party to confidences divulged by either side in the case." (*Ibid.*) In *Higdon*, the court held that screening was sufficient to avoid disqualification of the firm in a case where no confidences have been imparted, and *Cho* held that, where confidences were received, screening was not sufficient. (*Higdon, supra,* 227 Cal.App.3d at p. 1680; *Cho*, at p. 125.) In neither case was the litigants' sharing confidences with a former judicial officer determinative of whether disqualification of the *officer*, not his or her new firm, was warranted.

We conclude that trial court did not abuse its discretion in finding that Hassett had standing to move to disqualify Bailey based on a violation of rule 1.12.

### III

### *Disruption and Delay*

Defendants contend that removal of Bailey would cause disruption and delay in their preparation for trial and Hassett pursued disqualification for tactical reasons. Defendants cite, inter alia, *William H. Raley Co. v. Superior Court* (1983) 149 Cal.App.3d 1042, where the appellate court said that exercise of the power to disqualify counsel "requires a cautious balancing of competing interests," in which "[t]he court must weigh the combined effect of a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and any tactical abuse underlying a disqualification proceeding against the fundamental principle that the fair resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel unencumbered by conflicts of interest." (*Id.* at p. 1048.)

The trial court here did consider disruption and delay caused by Bailey's disqualification. However, the trial court pointed out that Grego continued to represent

10

defendants and could participate in the trial setting conference while new counsel was being retained.

Moreover, there is nothing in the record to support defendants' claim that Hassett pursued disqualification for tactical purposes. "This case is not one where, despite knowing the pertinent facts, a party unreasonably delayed seeking disqualification and so caused its opponent significant prejudice. [Citation.] There was no basis for concern here that one party, by belatedly moving to disqualify opposing counsel, was attempting to disrupt a case at a critical juncture. Similarly, this case was not one where a party tried to increase an opponent's litigation burdens by seeking disqualification only after the challenged counsel performed a substantial amount of work." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145, fn. 2.)

Rather, the circumstances here are the other way around. Hassett received notice that defendants retained Bailey on the day before a hearing on Green Bijou's and Bass's motion to expunge lis pendens and Hassett's motion to consolidate this case with *Bass v. Olson*. The tentative rulings on these motions were to deny the motion to expunge (and award attorney fees to Hassett) and grant the motion to consolidate. In the tentative ruling on the motion to expunge lis pendens, the court concluded it was more likely than not that Hassett would obtain a judgment that Bass's option to purchase Olson's properties was void and unenforceable and that Hassett's agreement to purchase the properties was enforceable. The tentative ruling on the motion to consolidate included the court's conclusion that *Bass v. Olson* and Hassett's suit involved common issues of law and fact, including that Hassett had standing to assert that his purchase agreement was valid and enforceable due to the invalidity of the Bass option and purchase agreement. In the letter to the judge on the eve of the hearing on these motions, Bailey advised that his association in cases in El Dorado County Superior Court led to recusal of the full bench in every instance, which prompted the judge to recuse herself that day. We agree with Hassett that Bailey's association and recusal request the night before the

11

hearings "were actions taken by the retired judge in this case intending to disrupt the proceedings in which tentative rulings had issued in favor of Hassett against the aligned interests of Bass and Judge Bailey's new client Olson."

IV

*Personal and Substantial Participation in Case or Matter*

Defendants' position is that rule 1.12(a) is "case specific" and "applies only where the lawyer participated personally and substantially as judge in the matter/case before the court." Defendants maintain the rule "should not apply to cases just because the property is similar or because a judge heard other cases with the same plaintiff or defendant." We disagree.

The commentary to rule 1.12 explains: "Personal and substantial participation may occur when, for example, the lawyer participated through decision, recommendation, or the rendering of advice on a particular case or matter. However, a judge who was a member of a multi-member court, and thereafter left judicial office to practice law, is not prohibited from representing a client in a matter pending in the court, but in which the former judge did not participate, or acquire material confidential information." (Rule 1.12, com. 1.) The term "personally and substantially" thus distinguishes between a judge who, for example, rendered a decision in a particular matter and a judge whose involvement amounts to no more than membership in a multi-member court where the matter was pending. (See also ABA Model Rules, rule 1.12, com. 1 ["The term 'personally and substantially' signifies that a judge who was a member of a multimember court, and thereafter left judicial office to practice law, is not prohibited from representing a client in a matter pending in the court, but in which the former judge did not participate"].) Moreover, the comment to rule 1.12 refers to "a case *or* matter," indicating that a "case" and a "matter" are not synonymous. (Rule 1.12, com. 1, italics added.)

12

Defendants do not dispute that Bailey participated personally and substantially by issuing orders in the *Bass v. Olson* and *Bass v. South Lake Tahoe* cases. Defendants' core contention is that these cases and the present action do not constitute a "matter" within the meaning of the rule. Rule 1.12 does not define the term "matter." Defendants argue the trial court erred in adopting the definition found in rule 1.7(e): "For purposes of this rule 'matter' includes any judicial or other proceeding, application, request for a ruling or other determination, contract, transaction, claim, controversy, investigation, charge, accusation, arrest or other deliberation, decision, or action that is focused on the interests of specific persons, or a discrete and identifiable class of persons." Rule 1.7 addresses a conflict of interest where a lawyer represents a client "directly adverse to another client in the same or a separate matter." (Rule 1.7(a).) Defendants contend that this definition is "appropriate . . . for lawyers not judges," because "[l]awyer [*sic*], not judges, obtain confidential information from their clients," but "no party appearing in a court room is the client of judge [*sic*]" and the "information provide [*sic*] to a judge in open court, it [*sic*] not confidential."[8] Again, we disagree.

The commentary to rule 1.12 of the ABA Model Rules, from which California's rule 1.12 is derived, states that rule 1.12 "generally parallels" rule 1.11, governing conflicts of interest of former and current government lawyers. (ABA Model Rules, rule 1.12, com. 1; see also Rotunda & Dzienkowski, Legal Ethics: The Lawyer's Deskbook on Professional Responsibility (2021) § 1.12-1 ["Rule 1.12 essentially extends the principles of Rule 1.11 (conflicts involving former government lawyers) to judges and other adjudicatory officials"].)[9] Commentary to California's rule 1.11 states that "[f]or

---

[8] As this excerpt demonstrates, defendants' opening brief contains numerous typographical and spelling errors.

[9] "Especially where there is no conflict with the public policy of California, the [ABA] Model Rules serve as a collateral source for guidance on proper professional conduct in

what constitutes a 'matter' for purposes of this rule, see rule 1.7(e)." (Rule 1.11, com. 2.) Rule 1.11(e) of the ABA Model Rules provides the same definition of a "matter" as California's rule 1.7(e). The commentary to rule 1.11(e) of the ABA Model Rules states that "[f]or purposes of paragraph (e) . . . a 'matter' may continue in another form. In determining whether two particular matters are the same, a lawyer should consider the extent to which the matters involve the same basic facts, the same or related parties, and the time elapsed." (ABA Model Rules, rule 1.11, com. 10.)

Defendants do not dispute—nor could they—that the present action involves the same parties (Bass, Olson) and same basic facts (the enforceability of Bass's options to purchase Olson's former properties in South Lake Tahoe) as *Bass v. Olson*. (See *Monument Builders of Pennsylvania, Inc. v. Catholic Cemeteries Assn.* (1999) 190 F.R.D. 164, 166 ["the two actions should be treated as the same 'matter': they involve the same parties and largely the same facts and conduct"].) Even in *Bass v. South Lake Tahoe*, a case Bailey said was "intertwined" with *Bass v. Olson*, Bailey made comments at a hearing suggesting that he viewed Bass's options as enforceable and that Bass was the rightful owner of the properties.

Defendants nonetheless insist that disqualification turns on whether the former judge received confidential information from a party to litigation over which the judge had presided. However, the commentary to rule 1.12 contains another disjunctive phrase to the contrary, i.e., that a former judge is not prohibited from representing a party in a matter where the judge "did not participate, *or* acquire confidential information." (Rule 1.12, com. 1, italics added.) Thus, participation *or* acquisition of confidential information

California." (*People v. Donaldson* (2001) 93 Cal.App.4th 916, 928; accord *Doe v. Yim* (2020) 55 Cal.App.5th 573, 582, fn. 3; *Kennedy, supra*, 201 Cal.App.4th at p. 1210; see also rule 1.0, com. 4 ["for guidance on proper professional conduct . . . rules and standards promulgated by other jurisdictions and bar associations may also be considered"].)

in a former action that overlaps with the present one can serve as a basis for disqualifying a former judge.

We conclude the trial court did not err in disqualifying Bailey due to his personal and substantial participation as a judge in a matter within the meaning of rule 1.12 of the Rules of Professional Conduct.

## DISPOSITION

The disqualification order is affirmed.  Hassett shall recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


        /s/
RAYE, P. J.


We concur:


    /s/
HULL, J.


    /s/
ROBIE, J.

15

Filed 5/13/22

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----


| | |
|---|---|
| ROBERT J. HASSETT, | C092212 |
| Plaintiff and Respondent, | (Super. Ct. No. SC20180100) |
| v. | ORDER MODIFYING OPINON AND CERTIFYING OPINION FOR PUBLICATION |
| PATRICIA G. OLSON et al., | |
| Defendants and Appellants; | [NO CHANGE IN JUDGMENT] |
| CODY LEE BASS et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of El Dorado County, Gerritt W. Wood, Judge. Affirmed.

Bruce P. Grego for Defendants and Appellants.

Porter Simon, James E. Simon and David W. Wolfe for Plaintiff and Respondent.

No appearance for Defendants and Respondents.

1

THE COURT:

It is ordered that the opinion filed herein on April 20, 2022, be modified as follows:

One page 9, second sentence of the second paragraph, replace the words "husbands' counsel" with "husbands" so the sentence reads:

> In *Higdon*, wives in two separate marital dissolution cases moved to recuse the firm representing the husbands when a court commissioner, who had heard and decided contested matters in each case, resigned and joined the firm.

There is no change in judgment

The opinion in the above-entitled matter filed on April 20, 2022, was not certified for publication in the Official Reports. For good cause it appears now that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:

_____/s/_____
RAYE, P. J.

_____/s/_____
HULL, J.

_____/s/_____
ROBIE, J.

2